Appeals from an order of the Supreme Court, Erie County (Diane Y. Devlin, J.), entered July 22, 2014. The order, inter alia, granted the motion of defendants City of Buffalo and Buffalo Police Department for summary judgment.
It is hereby ordered that the order so appealed from is affirmed without costs.
Memorandum: Plaintiffs commenced individual actions alleging personal injuries arising out of incidents of sexual abuse committed by defendant Gregg O’Shei while he was on duty as a police officer for defendants City of Buffalo and the Buffalo Police Department (city defendants). O’Shei allegedly selected *1131 his victims based on their previous criminal histories, drug abuse, and their status as single mothers. Supreme Court properly granted the motion of the city defendants for summary judgment dismissing the complaints against them. Initially, we note that plaintiffs have not challenged on appeal the court’s determination that the city defendants cannot be vicariously liable for the conduct of defendant O’Shei, and they therefore have abandoned any contentions concerning the propriety of that part of the order (see Pyramid Brokerage Co., Inc. v Zurich Am. Ins. Co., 71 AD3d 1386, 1388 [2010]; Brunette v Time Warner Entertainment Co., L.P., 32 AD3d 1170, 1170 [2006]).
The court properly granted the motion with respect to plaintiffs’ theory that the city defendants negligently retained or supervised O’Shei following his second of two on-duty motor vehicle accidents, the first in 1997 and the second in 2003. Plaintiffs contend that the city defendants failed to do an appropriate evaluation of O’Shei’s neuropsychological status after the second motor vehicle accident. Recovery on a negligent retention theory “requires a showing that the employer was on notice of the relevant tortious propensity] of the wrongdoing employee” (Gomez v City of New York, 304 AD2d 374, 374-375 [2003]; see Zanghi v Laborers’ Intl. Union of N. Am., AFL-CIO, 8 AD3d 1033, 1034 [2004], lv denied 4 NY3d 703 [2005]), i.e., “that the employer knew or should have known of the employee’s propensity for the conduct which caused the injury” (Kenneth R. v Roman Catholic Diocese of Brooklyn, 229 AD2d 159, 161 [1997], lv dismissed 91 NY2d 848 [1997], cert denied 522 US 967 [1997]; see Murray v Research Found. of State Univ. of N.Y., 283 AD2d 995, 996 [2001], lv denied 96 NY2d 719 [2001]; Piniewski v Panepinto, 267 AD2d 1087, 1088 [1999]). Thus, contrary to plaintiffs’ contention, the city defendants were under no common-law duty to institute specific procedures for supervising or retaining O’Shei inasmuch as they did not know of facts that would lead a reasonably prudent person to investigate the employee (see Buck v Zwelling, 272 AD2d 895, 895 [2000]; Kenneth R., 229 AD2d at 163; see also Judith M. v Sisters of Charity Hosp., 93 NY2d 932, 933-934 [1999]).
Our dissenting colleague applies a legal standard involving hiring procedures from Travis v United Health Servs. Hosps., Inc. (23 AD3d 884, 884-885 [2005]), but neither the Court of Appeals nor we have applied that standard in cases such as this, where hiring procedures are not at issue. Indeed, as the dissent acknowledges, this is a retention case, and it is well settled that the common-law duty for retention does not require *1132 as high a degree of care as does hiring (see Chapman v Erie Ry. Co., 55 NY 579, 583 [1874]; IB NY PJI3d 2:240 at 720 [2016]). The cases relied on by the dissent are therefore inapplicable. Even assuming, arguendo, that the common-law duty for hiring applies to the instant case, we conclude that the holding of Travis and similar cases does not control here. Although Travis has been interpreted as imposing a common-law duty on employers to conduct adequate hiring procedures irrespective of whether an employer knows of facts that would lead a reasonably prudent person to investigate an employee (see IB NY PJI3d 2:240 at 719-720 [2016]), we note that this Court has never imposed that broad legal duty on employers. We have held instead that “ ‘[t]here is no common-law duty to institute specific procedures for hiring employees unless the employer knows of facts that would lead a reasonably prudent person to investigate the prospective employee’ ” (Buck, 272 AD2d at 895 [emphasis added]; see also Judith M. v Sisters of Charity Hosp., 249 AD2d 890, 890 [1998], affd 93 NY2d 932 [1999]). We also disagree with the dissent’s conclusion that the foreseeability of the conduct gives rise to an employer’s duty to investigate an employee’s neuropsychological health inasmuch as foreseeability “is applicable to determine the scope of duty— only after it has been determined there is a duty” (Pulka v Edelman, 40 NY2d 781, 785 [1976]). The duty here did not arise inasmuch as the city defendants did not know of O’Shei’s propensity to commit sexual abuse and they did not know of any facts requiring a conclusion that they should have known of such a propensity (see Zanghi, 8 AD3d at 1034), and thus the issue of scope of duty is not before us.
Here, the city defendants established as a matter of law that they lacked notice of O’Shei’s propensity for the type of behavior causing plaintiffs’ harm (see Paul J.H. v Lum, 291 AD2d 894, 895 [2002]; Curtis v City of Utica, 209 AD2d 1024, 1025 [1994]). The city defendants demonstrated that O’Shei never exhibited any behaviors indicative of his alleged propensity to target vulnerable victims for sexual abuse, nor did the medical information submitted to the City following either of O’Shei’s motor vehicle accidents contain any information alerting the city defendants to such propensity. Therefore, contrary to plaintiffs’ contention, no duty arose on the part of the city defendants to employ any specific procedures or otherwise to investigate O’Shei’s fitness to return to work following the 2003 accident.
We conclude that plaintiffs failed to raise an issue of fact in opposition to the motion (see generally Zuckerman v City of *1133 New York, 49 NY2d 557, 562 [1980]). Contrary to plaintiffs’ contention, the alleged conversation between one of the plaintiffs and her brother, a City of Buffalo patrol officer, does not raise an issue of fact whether the city defendants had actual notice of O’Shei’s tortious propensity. The record developed by plaintiffs is inadequate to establish the content of that alleged conversation, as well as the context and circumstances thereof (see generally Caselli v City of New York, 105 AD2d 251, 255-256 [1984]).
Plaintiffs also failed to raise an issue of fact that O’Shei’s alleged traumatic brain injury, as purportedly exacerbated by the second motor vehicle accident, furnished constructive notice to the city defendants that O’Shei was likely to exhibit disinhibited behaviors. As noted above, there is nothing in the record supporting that contention.
The dissent conflates the traumatic brain injury O’Shei suffered in the 1997 motor vehicle accident, for which O’Shei was fully evaluated before his return to work in 2003, with “neuropsychological issues” that could be related to such an injury, but the record here does not establish that such “neuropsychological issues” ever existed. To the contrary, following the first motor vehicle accident, O’Shei’s physicians determined that there was “no evidence of emotional distress” and “no major psychological issues.” O’Shei denied that he was experiencing depression, anxiety, or PTSD symptoms, and he also told his physicians he “was not willing to consider counseling for issues associated with his brain injury.” Moreover, even after O’Shei was expelled from the Buffalo Police Department and convicted of official misconduct, he testified at his deposition that he had never treated with any psychiatrists or psychologists for any behavioral issues. Inasmuch as neither O’Shei nor his physicians ever detected any “neuropsychological issues” warranting treatment, we conclude that the city defendants were never under a duty to detect such issues in the absence of facts warranting an investigation.
Finally, we conclude that the affidavits of plaintiffs’ experts failed to raise an issue of fact. Neither expert offered any detail with respect to the procedures or testing the city defendants should have engaged in following O’Shei’s second motor vehicle accident and, therefore, both of their opinions are conclusory (see Diaz v New York Downtown Hosp., 99 NY2d 542, 545 [2002]; Keller v Liberatore, 134 AD3d 1495, 1496 [2015]; Neville v Chautauqua Lake Cent. Sch. Dist., 124 AD3d 1385, 1386 [2015]). Moreover, the opinion offered in the affidavit of plaintiffs’ expert neuropsychologist — who is not a medical doc *1134 tor — is speculative inasmuch as he failed to articulate any basis for asserting that “appropriate” testing would have revealed the type of sexually predatory propensity that O’Shei manifested against plaintiffs (see Golden v Pavlov-Shapiro, 138 AD3d 1406, 1406 [2016]; Bagley v Rochester Gen. Hosp., 124 AD3d 1272, 1273-1274 [2015]).
All concur except Peradotto, J.P.,
who dissents and votes to modify in accordance with the following memorandum.